## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 17-CR-** |
| | : | |
| **v.** | : | |
| | : | **18 U.S.C. §1343** |
| **HECTOR "SONNY" MARTINEZ,** | : | **(Wire Fraud),** |
| | : | **18 U.S.C. §1028A** |
| **Defendant.** | : | **(Aggravated Identity Theft),** |
| | : | **18 U.S.C. § 981(a)(1)(C),** |
| | : | **28 U.S.C. § 2461(c), and** |
| | : | **21 U.S.C. § 853(p)** |
| | : | **(Criminal Forfeiture).** |

### INFORMATION

The United States Attorney hereby charges that:

### COUNT ONE
### (Wire Fraud)

### Introduction

At all times material to this Information:

1. The National Labor Relations Board (NLRB) is an independent federal agency of the United States with its Headquarters located in the District of Columbia. It has 26 Regional Offices located throughout the United States, including in Los Angeles, California. The NLRB safeguards employees' rights to organize and to determine whether to have unions as their bargaining representative. The agency also acts to prevent and remedy unfair labor practices committed by private sector employers and unions. Employees, union representatives, and employers who believe that their rights under the National Labor Relations Act have been violated may file charges alleging unfair labor practices at their nearest NLRB Regional Office. When the NLRB successfully litigates or settles a case on behalf of aggrieved workers ("discriminatees"),

monetary damages related to lost wages, expenses, and interest, either are paid directly to discriminatees by the employer or union, or they are paid to the NLRB in the District of Columbia and disbursed to the discriminatees through its network of Regional Offices. The NLRB refers to all monetary damages as "backpay."

2. From April 1993 through July 27, 2016, the defendant HECTOR "SONNY" MARTINEZ worked at the NLRB in its Regional Office 21, located at 888 South Figueroa Street, Ninth Floor, in Los Angeles, California. From February 28, 2010, until his departure, the defendant HECTOR "SONNY" MARTINEZ worked as a Compliance Officer for the NLRB Regional Office 21, a position of public trust.

3. As a Compliance Officer, the Defendant was responsible for, among other things, disbursing backpay to discriminatees in the Los Angeles area. These individuals were not always aware that they were due payments or in what amount. The Defendant was responsible for working with an employer or union representative to identify the discriminatees entitled to backpay, calculating the backpay amount, notifying discriminatees about an award, and disbursing the correct funds. The Defendant had access to a confidential law enforcement database for purposes of trying to locate discriminatees. While some discriminatees received a single payment, others received installment payments over a specified time-period.

4. Once the Defendant identified the discriminatees who were entitled to backpay, he prepared a spreadsheet that included, among other information, the case name, the name of each discriminatee entitled to backpay, the discriminatee's Social Security Number, and the backpay amount. He also requested payment by the NLRB to the discriminatees. The Defendant transmitted the spreadsheet and payment request by interstate wire communications that being electronic mail from his office or home in California to the NLRB Finance Branch in

2

the District of Columbia. Typically, the NLRB Finance Branch in the District of Columbia, directed the United States Treasury to send to the Defendant in California, checks made payable to each discriminatee. The Defendant then distributed the checks to the discriminatees. However, a discriminatee could request an electronic transfer of funds directly into the discriminatee's bank account. If a discriminatee made such a request, the Defendant included on the spreadsheet, or provided later, the discriminatee's bank account information for making the electronic payment. The Defendant used his work, and occasionally his personal, electronic mail accounts to communicate with the NLRB Finance Branch about the backpay payments.

## The Scheme to Defraud

5. From in or around December 7, 2010, through in or around October 8, 2015, in the District of Columbia and elsewhere, the defendant HECTOR "SONNY" MARTINEZ, devised and intended to devise a scheme to defraud and to obtain money from the NLRB, by means of materially false and fraudulent pretenses, representations, and promises as more fully described below.

## The Purpose of the Scheme to Defraud

6. It was a purpose of the scheme to defraud that the Defendant HECTOR "SONNY" MARTINEZ embezzled approximately $396,296 from the NLRB using fictitious backpay disbursements to fictitious discriminatees and deposited into bank accounts controlled by the defendant HECTOR "SONNY" MARTINEZ.

## Manner and Means

7. It was a part of the scheme to defraud that the defendant HECTOR "SONNY" MARTINEZ fabricated the names of individuals who were allegedly entitled to backpay funds

3

("discriminatees") deposited by employers or unions with the NLRB, when, in fact, no such person existed nor was that person entitled to backpay.

8. It was a part of the scheme to defraud that the defendant HECTOR "SONNY" MARTINEZ used real Social Security Numbers belonging to actual other people and represented that those Social Security Numbers belonged to the fabricated discriminatees.

9. It was part of the scheme to defraud that the defendant HECTOR "SONNY" MARTINEZ listed his personal bank account information as belonging to the fabricated discriminatees on spreadsheets that he transmitted by electronic mail from his office or home in California to the NLRB Finance Branch in the District of Columbia to initiate payments to the fabricated discriminatees.

10. It also was a part of the scheme to defraud that the defendant HECTOR "SONNY" MARTINEZ opened at least eight bank accounts at three financial institutions to further the scheme and conceal backpay funds deposited into his personal accounts and to which he was not entitled.

11. It was a part of the scheme to defraud that the defendant HECTOR "SONNY" MARTINEZ, through this fraudulent conduct caused unauthorized backpay funds to be directly deposited, by wire transfer, into accounts in his name, accounts with his joint ownership, and accounts under his control, and by causing the NLRB Finance Branch to authorize these deposits, he obtained backpay totaling $396,296.18, to which he was not entitled. Because of the fraudulent conduct by defendant HECTOR "SONNY" MARTINEZ, the NLRB also paid an additional $38,527.43 in tax and other benefits withholdings, for a total loss of $434,823.61.

12. Between in or around December 7, 2010, and October 8, 2015, in the District of Columbia and elsewhere, the defendant HECTOR "SONNY" MARTINEZ for the purpose of

executing and attempting to execute the above-described scheme to defraud, did willfully cause to be transmitted by means of wire communications in interstate commerce from and into the District of Columbia certain writings, signals, and sounds, that is, communications between the defendant HECTOR "SONNY" MARTINEZ and the NLRB Finance Branch instructing it to pay purported backpay funds to fabricated discriminatees and to deposit that money into bank accounts controlled by the defendant HECTOR "SONNY" MARTINEZ.

**(Wire Fraud, in violations of Title 18, United States Code, Section 1343).**

## COUNT TWO
### (Aggravated Identity Theft)

13.     From in or around December 7, 2010, through in or around October 8, 2015, in the District of Columbia and elsewhere, the Defendant, HECTOR "SONNY" MARTINEZ, did knowingly possess and use, without lawful authority, a means of identification of another person, that is Social Security Numbers, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud under Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

**(Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A).**

## FORFEITURE ALLEGATION

14.     Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C., Section 981(a)(1)(C) and 28 U.S.C., Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in

the amount of at least \$396,296.

      15.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

          a.    cannot be located upon the exercise of due diligence;

          b.    has been transferred or sold to, or deposited with, a third party;

          c.    has been placed beyond the jurisdiction of the Court;

          d.    has been substantially diminished in value; or

          e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

CHANNING D. PHILLIPS
United States Attorney
For the District of Columbia

By:

DENISE A. SIMMONDS
Assistant United States Attorney
Bar No. DC 437960
United States Attorney's Office
 For the District of Columbia
555 Fourth Street, N.W, Room 5229
Washington, D.C. 20530
(202) 252-7284
Denise.Simmonds@usdoj.gov